# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| NAPOLEON HARTSFIELD,<br><br>    Plaintiff,<br><br>vs.<br><br>IOWA DEPARTMENT OF CORRECTIONS, STATE OF IOWA, PUBLIC COMMUNICATIONS SERVICES, INC., GARY MAYNARD, WARDEN BURT, JAKE NOONAN, JOHN FAYRAM, CAPT. RINDY, LT. OLDENBURGER, PHIL KAUDER, CINDY WOLMUTT, WILLIAM H. SOUPENE, and NANCY KUORA,<br><br>    Defendants. | No. 06-CV-3082-LRR<br><br>**ORDER** |

_____

## TABLE OF CONTENTS

*I.*   *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*  *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*

*III.* *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . *3*

*IV.*  *FACTUAL FINDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.*   *The Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.*   *Plaintiff's "Legal Materials," Mail and Grievance Hearings* . . . . . . *4*
    *C.*   *Plaintiff's Exercise Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *D.*   *Disciplinary Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*V.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *A.*   *Access to Courts Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *1.*   *Failure to file for post-conviction relief* . . . . . . . . . . . . . . *8*
        *2.*   *Retaliation claim* . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *B.*   *Plaintiff's Eighth Amendment Claim* . . . . . . . . . . . . . . . . . . . *12*
        *1.*   *Whether ASP's exercise policy is constitutional* . . . . . . . . *12*

        2. *Denial of exercise* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
   C. ***Prison Disciplinary Proceedings*** . . . . . . . . . . . . . . . . . . . . . . . . . ***15***
   D. ***State Law Claims*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***16***
   E. ***Miscellaneous Arguments*** . . . . . . . . . . . . . . . . . . . . . . . . . . ***17***
**VI. *CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***17***

## *I. INTRODUCTION*

The matter before the court is "Defendant Prison Officials' Motion for Summary Judgment" ("Motion") (docket no. 75).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On November 22, 2006, Plaintiff Napoleon Hartsfield and other plaintiffs filed a complaint ("Initial Complaint") (docket no. 1). On May 10, 2007, the court dismissed the other plaintiffs from the instant action due to their failure to comply with Local Rule 41.1. *See* Order (docket no. 31). On September 11, 2007, Plaintiff filed an amended verified complaint ("Complaint") (docket no. 61).[1] The Complaint alleges the Iowa Department of Corrections, State of Iowa, Public Communications Services, Inc., Gary Maynard, Warden Burt, Jake Noonan, John Fayram, Captain Rindy, Lieutenant Oldenburger, Phil Kauder, Cindy Wolmutt, William H. Soupene and Nancy Kuora (collectively, "Defendants") are liable to Plaintiff for three claims.[2]

---

[1] The Complaint made no mention of a number of defendants and claims included in the Initial Complaint. "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). Therefore, the court will only consider the claims and defendants included in the Complaint.

[2] Plaintiff also named the Iowa Communications Network and John Gillespie as Defendants in the Complaint. On November 8, 2007, the court dismissed those defendants from the instant action. Order (docket no. 68). Further, the court notes the Complaint does not include specific allegations against many Defendants. For example, Plaintiff does not allege the State of Iowa Public Communications Services, Inc. was personally involved

(continued…)

First, Plaintiff alleges Defendants denied his fundamental constitutional right of access to the courts by delaying access to his legal materials and by interfering with his ability to mail pleadings and correspondence to the courts. In conjunction with this claim, Plaintiff alleges Defendant Oldenburger retaliated against one of Plaintiff's grievance filings by refusing to allow Plaintiff access to legal materials. Second, Plaintiff contends Defendants' policy at the Anamosa State Prison ("ASP"), which requires segregated inmates to constantly walk forward while in exercise pens, violates his rights under the Eighth Amendment to the United States Constitution. Plaintiff argues his medical condition prohibits him from constantly walking forward in an exercise pen, and bars him from engaging in exercise under the ASP policy. Third, Plaintiff alleges ASP's disciplinary policy and the manner in which the policy is implemented violates his due process and equal protection rights under both the United States Constitution and the Iowa Constitution.

On March 13, 2008, Defendants filed the Motion. On May 7, 2008, Plaintiff filed a Resistance (docket no. 83). On May 12, 2008, Defendants filed a Reply (docket no. 84). The court finds the Motion fully submitted and ready for decision.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2](…continued)
with or had direct responsibility for the incidents that injured him. The lack of such allegations against these defendants would defeat Plaintiff's claims against them. *See Gully v. Maynard*, 218 Fed. Appx. 551, 552 (8th Cir. 2007) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)).

248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## IV. FACTUAL FINDINGS[3]

When viewed in the light most favorable to the nonmoving party, that is, Plaintiff, and affording him all reasonable inferences, the facts are these:

### A. The Players

Plaintiff is an inmate at ASP. Defendants are prison officials who work for ASP or who have communicated or corresponded with Plaintiff during his imprisonment at ASP.

### B. Plaintiff's "Legal Materials," Mail and Grievance Hearings

After arriving at ASP, Plaintiff contends he requested ASP make certain "legal materials" available to him to enable him to file an action for post-conviction relief ("post-conviction relief"). Plaintiff states Defendants denied him access to these legal materials because there was no "court ordered deadline" requiring Defendants to provide Plaintiff

---

[3] Plaintiff argues Defendants failed to file any affidavit in support of their facts, violating Federal Rule of Civil Procedure 56(e)(1). Plaintiff misrepresents the record. Defendants filed a series of affidavits in support of the Motion. *See* Defendants' Appendix (docket no. 75-4), at 181-188.

with legal materials. Plaintiff states Defendants later allowed Plaintiff access to his legal materials; however, by that time, the applicable statute of limitations for post-conviction relief had expired. Plaintiff suggests Defendants somehow prevented him from properly exhausting administrative remedies prior to seeking post-conviction relief. Finally, Plaintiff suggests Defendants violated his right to access to courts by denying him the necessary postage and envelopes needed to file for post-conviction relief in a timely manner.

William Rindy is the correctional supervisor at ASP who communicated with Plaintiff regarding his right to use postage and envelopes for legal mail. Rindy is familiar with Plaintiff as well as ASP procedures applicable to mail and indigent inmates. An "indigent" is defined by the State of Iowa Department of Corrections ("DOC") Policy and Procedure as an inmate who has no funds in his account and has not received allowance, idle pay or an outside source of funds within the preceding three months. Affidavit of William Rindy ("Rindy Aff.") (docket no. 75-5), at p. 183, ¶ 2, Ex. D (located at docket no. 76-4, pp. 28-29). ASP procedures "permit indigent inmates to receive one stamped envelope per week." Rindy Aff. at ¶ 2.

As of June 22, 2006, Plaintiff "had a positive balance in his account [. . .] and did not have a deficit in his account until July 20, 2006. *Id*. at ¶ 3. On August 1, 2006, Rindy gave Plaintiff five envelopes with postage. On August 6, 2006, Rindy gave Plaintiff five more envelopes with postage at state expense despite the fact Plaintiff was not indigent under DOC Policy and Procedure standards. On August 15, 2006, Plaintiff claimed he needed five envelopes to send legal mail for upcoming court deadlines. Rindy advised Plaintiff he was not eligible for free envelopes and postage because he was not indigent under DOC standards because he had deposits in his account three months prior to his request. ASP ultimately permitted Plaintiff to file this particular legal document by having the State advance his costs and charge it to his account. On September 1, 2006, Rindy

gave Plaintiff two more envelopes with postage. On September 5, 2006, Rindy gave Plaintiff an envelope and postage. On September 19, 2006, Rindy gave Plaintiff extra envelopes and two free stamped envelopes. On September 21, 2006, Plaintiff complained he was not given free stamped envelopes to write to his family. In response to this complaint, Security Director Noonan stated Plaintiff would receive legal envelopes when he could show they were necessary for a court deadline.

On September 22, 2006, Plaintiff informed Rindy he had to send legal mail to comply with a court deadline. Rindy informed Plaintiff he "would provide him one envelope per week per the [DOC] policy." *Id.* at ¶ 14. On September 25, 2006, Plaintiff informed prison officials they would deny him access to courts if he did not receive a free stamped envelope to meet a deadline on October 3, 2006 for his post-conviction relief. On September 28, 2006, Rindy gave Plaintiff two free stamped envelopes. On October 17, 2006 and October 23, 2006, Rindy gave Plaintiff a free stamped envelope.

At some point, Plaintiff alleges he asked a prison official to provide him with certain legal materials to allow him to file for post-conviction relief. When he was not provided with these materials, Plaintiff filed a grievance with the appropriate ASP authority. This grievance was initially denied. Plaintiff then filed a grievance appeal ("Grievance Appeal"). Plaintiff's Grievance Appeal Form dated August 16, 2006 states: "Action Requested[:] I want to get my *disciplinary misconduct reports* out of my legal property so I can file post[-]conviction relief actions on them." Plaintiff's Exhibit L (docket no. 83-3) (emphasis added). Warden Burt responded to this appeal on August 24, 2006, stating, "we will grant access to the specific documents you reference in this grievance." *Id.* Plaintiff complains Defendant Oldenburger later came to his cell and stated "he would pull up the disciplinary reports only on the computer, allowing [P]laintiff *access only to the disciplinary reports*." Complaint at ¶ 65 (emphasis added). Plaintiff then asked Defendant Oldenburger for access to legal materials other than his misconduct

6

reports. Plaintiff alleges Defendant Oldenburger responded by stating "I don't care about your property since you like filing things [. . .] on this; get your misconduct reports as best as you can," and walked away. Complaint at ¶ 68. Plaintiff contends Defendant Oldenburger never gave him the legal materials he requested.

Plaintiff never filed for post-conviction relief.

### C. *Plaintiff's Exercise Plan*

On September 28, 2006, Dr. Satyavolu examined Plaintiff regarding his feet. Dr. Satyavolu diagnosed Plaintiff with corns and callosities. Dr. Satyavolu also diagnosed Plaintiff with malingering. Dr. Satyavolu's orders required Plaintiff to not walk more than thirty minutes three times a week while in lock-up status. Additionally, Dr. Satyavolu directed Plaintiff to ride a stationary bike in health services for thirty minutes three times a week as long as he continued to refuse to walk. Plaintiff does not dispute these facts or the existence of the exercise plan. However, Plaintiff claims he had no knowledge of the exercise plan. Plaintiff never sought to use a stationary bike in health services as an alternative to walking. Plaintiff claims he never tried to do so because he was unaware this alternative was available to him.

Sally Potter, RN completed a nurse encounter form after Plaintiff's examination with Dr. Satyavolu. Nurse Potter's encounter form indicates Plaintiff made the following comments following his examination with Dr. Satyavolu: "I ain[']t gonna do it. Nobody is gonna tell me I got to walk. You people don't know what you are talking about. I ain[']t gonn[a] walk for nobody." Affidavit of Gerard Connolly (docket no. 75-5), Exhibit Q (located at docket no. 75-4 at 50). In her encounter form, Nurse Potter states:

> [T]ape was applied to [Plaintiff's] foot for padding. [Plaintiff] was bearing weight and was walking with a steady and fast gait when he was being escorted to [his living unit. . .]. He was walking so fast—I was unable to keep up with him. He was angry and upset about what [Dr. Satyavolu] had informed him to do for the care of his callous. He made no remarks about

7

> pain or discomfort while walking fast. No facial grimaces or [symptoms] of pain or discomfort was noted when he was walking.

*Id*. Plaintiff denies this encounter with Nurse Potter. The next time Plaintiff made any complaint regarding his feet was on May 5, 2007, approximately seven months after seeing Dr. Satyavolu.

### D. Disciplinary Proceedings

On August 24, 2006, Plaintiff was disciplined for having an excessive amount of typing paper in his cell on August 18, 2006 and for being at the "law library" on August 19, 2006. On October 5, 2006, Plaintiff received a disciplinary notice for misconduct.

## V. ANALYSIS

### A. Access to Courts Claim

#### 1. Failure to file for post-conviction relief

Defendants argue Plaintiff's access to courts claim should be dismissed because he is unable to show any actual injury.

> [T]he right of access to the court guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'

*Cody v. Weber*, 256 F.3d 764 at 767-68 (8th Cir. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996)). Additionally, an inmate alleging an access of courts violation "is required to show actual injury." *Id.* (citing *Lewis*, 518 U.S. at 349 & 351). "'To assert a successful claim for denial of meaningful access to the courts an inmate must demonstrate [. . .] he suffered prejudice.'" *Blaise v. Fenn*, 48 F.3d 337, 340 (8th Cir. 1995) (quoting *Berdella v. Delo*, 972 F.2d 204, 210 (8th Cir. 1995)); *see also Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (stating a plaintiff must demonstrate "a nonfrivolous legal claim had been frustrated or was being impeded" to succeed on an access to courts claim).

8

*Blaise* noted, "'[w]hen prisoners fail to exhaust their administrative remedies because of interference from prison authorities, the administrative remedy is rendered inadequate. In these circumstances we can hardly say [. . .] an administrative remedy exists for the claimed wrong. In short, the exhaustion doctrine does not come into play.'" *Blaise*, 48 F.3d at 341 (quoting *Bugely v. State*, 464 N.W.2d 878, 880 (Iowa 1991)). Upon receiving a claim unexhausted because of interference, the court must "remand for further disciplinary proceedings." *Id*. (citing *Bugely* at 880-81). *Blaise* reasoned, although the plaintiff had not administratively exhausted his claims due to alleged interference from prison officials, he had a remedy for his disciplinary claims, "which is to bring them before the district court with a showing of interference from prison authorities." *Id*. Accordingly, *Blaise* found the plaintiff had not suffered prejudice or actual injury because he had failed to file for relief with a court. *Id*.

For purposes of the Motion, the court assumes without deciding Plaintiff's version of the facts surrounding his access to legal materials, postage and grievance proceedings is true. Even under these facts, Plaintiff's claim for violation of his right to access to courts must fail. Like the *Blaise* plaintiff, Plaintiff failed to file a judicial complaint for post-conviction relief. The court recognizes Plaintiff believes his claim was barred under the applicable statute of limitations and exhaustion doctrine; however, to trigger relief on an access to courts claim, a plaintiff must have actually sought access to a court. *Blaise*, 48 F.3d at 341. Plaintiff does not dispute he has not tried to access a court for post-conviction relief. Therefore, as a matter of law, Plaintiff has not been denied access to courts because he never sought such access.

Plaintiff's arguments to the contrary miss the point. Even though Plaintiff may have been unable to access legal materials for his post-conviction relief claim, he could have nonetheless filed a judicial claim for post-conviction relief after the applicable statute of limitations had run and argued Defendants interfered with his ability to file in a timely

9

manner. Only upon a court's dismissal of the post-conviction relief action on statute of limitations grounds would Plaintiff have incurred "actual injury" or "prejudice" for purposes of his access to courts claim. *Id.*; *see also Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (holding speculative claims are insufficient to establish a constitutional right to access a court).

Plaintiff also argues an exception is allowed when "'a systemic denial of inmates' constitutional right of access to the courts is such a fundamental deprivation that it is an injury in itself.'" *Id.* at 340 (quoting *Hershberger v. Scaletta*, 33 F.3d 955, 56 (8th Cir. 1994)). Plaintiff cites to a number of exhibits purporting to support his argument pertaining to the *Hershberger* exception; however, none of these exhibits relate to or imply any "systemic denial" of Plaintiff's right to access to courts. For example, Plaintiff's Exhibit X (docket no. 83-4) sets forth a litany of instances in which Plaintiff was limited to a certain amount of envelopes and postage at ASP for his legal matters. However, nothing in Exhibit X indicates Plaintiff or any other inmate was consistently denied postage. Inmates need not "be provided with *unlimited* free postage." *Blaise*, 48 F.3d at 339 (emphasis in original). To the extent the other exhibits are legible, the court finds they are similarly unsupportive of any systemic denial of rights. Moreover, the facts indicate Plaintiff sent out mail well in excess of the amount permitted by ASP procedures. It is unclear how Plaintiff could have suffered an injury under the facts in this case.

Because Plaintiff has not suffered an actual injury pertaining to his right to access to courts, the court shall dismiss Plaintiff's access to courts claim.

### 2.    *Retaliation claim*

In the Complaint, Plaintiff's retaliation allegations are raised in conjunction with his access to courts claim, which, as discussed above, the court shall dismiss. However, in the Resistance, Plaintiff suggests Defendant Oldenburger's alleged retaliatory acts against Plaintiff constitute a claim that is separate from his access to courts claim. Accordingly,

to the extent not addressed above, the court considers Plaintiff's allegations pertaining to Defendant Oldenburger.

"Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id.* "'The violation lies in the *intent* to impede access to the courts.'" *Id.* (quoting *Madewell*, 909 F.2d at 1207) (emphasis in *Madewell*).

From the facts alleged and taken as true for purposes of the Motion, it is clear Defendant Oldenburger did not *intend* to impede Plaintiffs' access to courts by denying him access to certain legal property. In Plaintiff's Grievance Appeal, Plaintiff only requested access to his disciplinary reports—nothing more. Therefore, when Warden Burt granted Plaintiff access to the legal materials sought in the Grievance Appeal, those materials were necessarily limited to his disciplinary reports. Plaintiff's subsequent request to Defendant Oldenburger to access his "full disciplinary record, my statement and other evidence and documents" was therefore outside the scope of the material he was permitted to access.[4] Complaint at ¶ 66. Defendant Oldenburger did not intend to deprive Plaintiff access to courts. Rather, as demonstrated by Plaintiff's exhibits and the Complaint, "Defendant Oldenburger simply denied an overreaching inmate materials not permitted by policy or the special permission granted by [Warden] Burt." Reply at 4.

---

[4] The court notes Plaintiff filed a second Grievance Appeal, dated August 28, 2006, in which Plaintiff sought "legal papers, law books[,] newspapers and any pending legal material exhibits." Exhibit L. However, Warden Burt's permission to access legal documents was dated August 24, 2006—four days prior to Defendant's second Grievance Appeal. For this reason, Warden Burt's permission to access legal materials reference in Plaintiff's Grievance Appeal was necessarily limited to the materials listed in the August 16, 2006 Grievance Appeal.

Therefore, the court shall dismiss the Complaint to the extent it alleges a retaliation claim against Defendant Oldenburger.

### B. *Plaintiff's Eighth Amendment Claim*

Plaintiff's Eighth Amendment claim is comprised of two arguments: (1) ASP's exercise policy requiring segregated inmates to constantly walk forward while in exercise pens is unconstitutional; and (2) due to Plaintiff's medical condition, Plaintiff is precluded from exercising under the ASP policy, and his lack of exercise violates his Eighth Amendment right to be free from cruel and unusual punishment. The court examines each of these arguments below.

#### 1. *Whether ASP's exercise policy is constitutional*

The Eighth Amendment to the United States Constitution provides: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Accordingly, "'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment bars a prison and its officials from being deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). "In considering an alleged deprivation of adequate exercise, courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." *Id.* (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1028-29 (3d Cir. 1988)). "[L]ack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* at 449 (citing *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)).

The court has already held ASP's rule requiring inmates to move forward

continuously while in exercise pens to be constitutional. *See Hershberger v. Scaletta*, 861 F. Supp. 1470, 1478 (N.D. Iowa 1993), *aff'd*, 33 F.3d 955 (8th Cir. 1994). "[T]he exercise pen rules [at ASP] requiring prisoners to move forward continuously were enacted for the valid penological purpose of preventing assaults in the exercise pens and were reasonably related to that purpose." *Id.* Plaintiff challenges the continuing necessity of this policy, arguing the purpose for which it was intended is no longer at issue at ASP. More specifically, Plaintiff alleges inmates are placed in their own exercise pens with no other inmates, negating ASP's policy need to avoid confrontations between inmates in exercise pens. However, Plaintiff's claim of a change in policy is not supported by any citation to evidence. Absent evidence indicating this policy is now a nullity, the court shall not consider Plaintiff's facial challenge to ASP's exercise policy. Accordingly, the court shall dismiss Plaintiff's Eighth Amendment challenge to ASP's exercise policy for segregated inmates.

### 2. *Denial of Exercise*

Plaintiff claims his medical condition prevents him from walking forward continuously during exercise, rendering him unable to exercise and subjecting him to cruel and unusual punishment for lack of exercise. To prevail, Plaintiff must show Defendants "were deliberately indifferent to his exercise needs." *Wishon*, 978 F.2d at 448-49. Defendants recognized Plaintiff was medically unable to walk continuously forward when placed in the exercise pen because of his segregated imprisonment status. The undisputed facts show Defendants were willing and able to provide Plaintiff with one of two exercise plans in accordance with Dr. Satyavolu's orders: (1) walk for thirty minutes three times a week or (2) ride a stationary bike for thirty minutes three times a week. Defendant does not dispute Dr. Satyavolu set forth a medical order allowing him alternative forms of exercise. Defendants cannot be faulted for Plaintiff's failure to take advantage of these exercise opportunities. Because the undisputed facts show no deliberate indifference to

Plaintiff's right to exercise by Defendants, Plaintiff's Eighth Amendment claim for lack of exercise fails as a matter of law.

Although Plaintiff does not dispute Defendants were willing to offer him exercise alternatives, Plaintiff argues he was unable to take advantage of those exercise options because he was never made aware of them. In essence, Plaintiff contends Dr. Satyavolu failed to advise him of his exercise options. Whether true or not, this factual question is not material to the Motion. A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. If Plaintiff's Eighth Amendment claim somehow resulted from his medical provider's failure to inform him of alternative exercise options, Plaintiff's claim should have been raised against his health care professionals—not against the Defendants.

In essence, Plaintiff argues his medical professionals deviated from their professional duty to inform him of his exercise alternatives, causing him to forgo exercise opportunities. At best, a claim arising from these circumstances, if one exists, constitutes a medical malpractice action. *See Philips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (stating a prima facie medical malpractice claim requires a plaintiff to "demonstrate the applicable standard of care, the violation of this standard of care, and a causal relationship between the violation and the violation and the harm allegedly suffered by the plaintiff"). However, medical negligence does not constitute a violation of Eighth Amendment rights. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing case as frivolous because "[n]either differences of opinion nor medical malpractice state an actionable Constitutional violation"); *Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) ("[T]he law requires that [the] plaintiff make a showing of subjective awareness by the prison officials of a "*substantial* risk" of "*serious* harm" to a prisoner in order to establish an Eighth Amendment deliberate indifference cause of action[.]"). Accordingly, the court shall dismiss Plaintiff's Eighth Amendment claim.

## C. Prison Disciplinary Proceedings

Plaintiff claims the following alleged ASP policies violate his rights under the United States Constitution and the Iowa Constitution: (1) preventing an inmate from having witnesses present and cross-examining them at disciplinary hearings; (2) preventing an inmate from confronting a witness or otherwise keeping witness statements confidential at disciplinary hearings; and (3) preventing an inmate from viewing "physical evidence" of misconduct for disciplinary proceedings. Complaint at ¶¶ 75-81. For purposes of the Motion, the court assumes without deciding ASP's disciplinary procedures are as Plaintiff alleges. Plaintiff has been subject to two disciplinary proceedings at ASP; however, he does not plead or argue he suffered any injury as a result of these alleged unconstitutional disciplinary procedures. In the Complaint, Plaintiff claims to seek both damages and injunctive relief for this claim. In contrast, in his Resistance, Plaintiff states he is not requesting any relief for this claim other than "a change in the way that the [disciplinary] hearings [are] conducted." Resistance Brief (docket no. 83-1), at 8. Because Plaintiff apparently does not seek damages for this claim, the court confines its analysis of this claim to injunctive relief.

Defendants argue Plaintiff has no standing to claim ASP's disciplinary procedures violate the United States Constitution.[5] "Standing is a 'threshold inquiry' and 'jurisdictional prerequisite that must be resolved before reaching the merits of a suit.'" *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007) (quoting *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007)). Standing is comprised of three elements: (1) an "'injury in fact'"; (2) "'a causal connection between the injury and the conduct complained of'"; and (3) "a likelihood 'the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At the summary judgment stage, 'the party invoking federal jurisdiction bears the burden

---

[5] The court discusses Plaintiff's state law claims in Section V.D.

15

of establishing' injury in fact by alleging specific facts that taken as true demonstrate the plaintiff suffered 'distinct and palpable injuries that are fairly traceable' to the defendant's actions." *Ark. ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co.*, 160 F.3d 433, 434 (8th Cir. 1998) (quoting *Lujan*, 504 U.S. at 561).

Plaintiff cannot satisfy any of the elements of standing. First, Plaintiff has not pleaded or otherwise argued he has suffered or will suffer a "concrete and particularized and actual or imminent" injury necessary to show an "injury in fact." *Ben Oerhrleins & Sons and Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1378 (8th Cir. 1997). Although Plaintiff claims ASP's procedures prevent him from marshaling the evidence, he does not state he has been or will be injured by this practice. Second, even if the court assumes Plaintiff has suffered an injury in fact from his two instances of discipline, Plaintiff has not pleaded or shown "a causal connection between the injury and the conduct complained of[.]" *Medalie*, 510 F.3d at 829. Stated another way, Plaintiff has not alleged or argued any connection between his two instances of discipline and the alleged unconstitutional ASP disciplinary procedures. Without this connection, Plaintiff has no standing. Third, Plaintiff has not indicated or pleaded a favorable decision by the court will redress any injury he has suffered. *See id.* (listing redressability as a component of standing). Accordingly, Plaintiff has no standing for this claim and the court shall dismiss it. *See Arkansas ACORN*, 160 F.3d at 435 (affirming district court's dismissal of claim for lack of standing at summary judgment stage).

### D. State Law Claims

As discussed above, the court shall dismiss all Plaintiff's federal constitutional claims over which it has original subject-matter jurisdiction. The remaining claims are state law claims over which the court may choose to exercise jurisdiction. The court may exercise supplemental jurisdiction over claims for which it does not have original jurisdiction "that are so related to claim in the action within such original jurisdiction that

they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The Supreme Court has noted that 'in the usual case in which all federal[]law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine [. . .] will point toward declining to exercise jurisdiction over the remaining state[]law claims.'" *Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the court declines to exercise jurisdiction over Plaintiff's state law claims. In doing so, the court dismisses the last of the claims in the Complaint, and shall dismiss the Complaint in its entirety.

### *E. Miscellaneous Arguments*

In the Motion, Defendants argue (1) qualified immunity bars Plaintiff from recovery and (2) Plaintiff is not entitled to compensatory damages under 42 U.S.C. § 1997e(e) for mental or emotional distress. Because the court has dismissed the Complaint on other grounds, it need not address these issues.

### *VI. CONCLUSION*

For the foregoing reasons, the Motion (docket no. 75) is **GRANTED** and the Complaint (docket no. 61) is **DISMISSED**.

**IT IS SO ORDERED.**

**DATED** this 18th day of August, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA